Thank you, Your Honor, and may it please the Court, James Kuhn on behalf of the plaintiff in this case. The question is whether the ALJ in this Social Security case committed legal error in ignoring written Vocational Rehabilitation Division evidence concerning the plaintiff's limitations, and if that was in fact error, whether the remedy should be remand for payment of benefits or for further proceedings. There is no question, I think, that an ALJ in Social Security is required to consider lay evidence. The government states as much in its brief at page 15, and the Commissioner's own regulation lists the kinds of evidence that will be considered. Among those kinds of evidence are public and private social and welfare agencies, and the government does not contest our assertion that the Oregon we get at least as far as to say that the Vocational Rehabilitation Division evidence must have been considered by the ALJ. It needed to be. I have a couple questions. One of them is that it's very difficult to tell from this document either who Davis was, what her qualifications were, and what any of her little excess were based on, what information she had, whether she was doing anything but reporting what the claimant told her. That's right. I think we cannot say from this record what mental process Ms. Davis went through or what her education is. Or what her data was. That's the biggest problem. I'm sorry, what her data was? What her data was. Right. That's true. We cannot say those things. Those might all be reasons the ALJ could have given for saying, well, I'm going to give this document more or less weight, which he did not do. And the second thing is that this document, as I understand it, is part of or related to a larger document from the same agency. It's part of an evaluation process. That's right. Well, the evaluation at the end of it, and I'm sorry I can't give you the page, but at the end of Ms. Davis' part of this, which is a series of checkboxes, it would be about page 212 or 13, has a place to say, well, how severe is this? Which is most significantly disabled. Right. Compared to what? We don't know compared to what. That's true. And these are all things that the ALJ might have said if the ALJ wanted to discount this document. Well, I assume these are terms that are known to the people in the industry. This is done by an employee of the Department of Human Resources, Vocational Rehabilitation Division. That's right. And these terms mean something to the agency, to the agency that decided this, that when they say significantly disabled, that must be a term that has meaning to both agencies. Well, it is, of course, the term that they have chosen to rate people and to put them in various categories. That is the severest category of those, I believe, three that appear on that page. Does that, does that, does Oregon's definition of most significantly disabled correlate to the Social Security Administration's definition? We don't know that. There's no statutory, and I don't even believe that there's an Oregon regulatory definition of most significantly disabled. On the following two pages in the excerpts of record, I'm looking at 213 and 214, 213 is done by the same staff member, Sheila Davis, and she suggests that she needs assistance with vocational exploration and choosing an appropriate vocational goal, all of which seems to contemplate that even though she's just said she's most severely disabled, that she nevertheless is able to work. The following page, which is filled out by Wendy Wood, also says she needs a specialized placement, which may eliminate some jobs that require varied job duties and multitasking. On the other hand, there are a lot of retail stores in Portland, and a moderate amount of stores use price tags still, which of course related to some of her prior employment. So even within the documents from Oregon, as Judge Berzon said, there do seem to be some evidence that they contemplated that she would be able to work. Well, they contemplate that they might be able to make her able to work. That's what she's there for, to rehabilitate her, to make it possible for her to work. Whether that ends up being true or not, we don't know because the program was not followed out. But we do not dispute that one can find evidence in the record, whether in the vocational rehabilitation document or in medical documents, that might say, that might weigh against the documents on which we rely. That is true. But as a matter of administrative review, the ALJ is required to say what his reasons are, to give us the reasoning that says, I am discounting this document and here's why. Given the ambiguities in the record, what is it that you would like us to do? We think you should send it back for payment of benefits. The reason being, this is not something that's hiding in the record. Counsel at the hearing asked the very specific question to the vocational expert for the commissioner. If these limitations are true, are there any jobs that the plaintiff could do? Answer, no. The question I would have about that is, if the ALJ fails to credit something and fails to give a reason, do you have a case that says whether we remand so that he may then give the reason or whether we award the benefits? I think under Varney and for medical evidence and under Smolin and Dodrill for other evidence, for lay evidence, as long as there is no other evidence that needs to be brought into the record, the record is complete. If we take this thing as true and we have a result, then we remand for that result to be implemented. In this case, payment of benefits. This isn't a question of more evidence being needed. But in this case, well, except there is, because nobody testified in this case. Nobody was cross-examined. And as we just explored, it's very ambiguous evidence. We really can't understand it very well. Well, the commissioner had a vocational expert who testified. I assume that. Yes. But in terms of crediting this evidence, what are you crediting? I mean, we then have this report from her colleague, Wendy Wood, based on the earlier evaluation, which says labor market is considered fair. The labor market may be fair. I don't believe that speaks to the capabilities of the plaintiff. But the fact is, this is a person. I think we can, from the record. Wendy needs a specialized placement which may eliminate some jobs that require a lot of varied job duties and multitasking. On the other hand, there are a lot of retail stores in Portland, and a moderate amount of stores use price-tagged jobs. Right. It certainly doesn't sound like somebody who can't work. These are possibilities. That's a statement about. Exactly. So since there are possibilities, what is there to credit? What is ambiguous? The overall report is at least ambiguous. The overall report may be ambiguous. That's true. But the opinion of Sheila Davis, who is a person qualified, I think we have to say, is qualified to make these decisions and to make these evaluations. Otherwise, the state of Oregon, which is certainly not partial in this case, would not have put her in that job. When she makes those evaluations and the commissioner's own vocational expert says, with those evaluations, this person cannot do any jobs in the national economy, that's why I think we need to remand her payment. But where does it say that she cannot do any jobs in the national economy? That doesn't seem to be what Oregon said. No. Oregon did not say that. Oregon said she has the following limitations. When those limitations were presented at hearing to the vocational expert brought by the commissioner, the vocational expert said, given those limitations, there are no jobs the person can do. That's page 62 of the record. If the Court has nothing further at this time, I'd like to reserve the rest for rebuttal. Thank you. May it please the Court, Lisa Wolfe on behalf of the commissioner. The essence of this Court's review is substantial evidence standard. When evidence is mixed, as is here, if the ALJ's interpretation of the evidence is rational, the Court should uphold it. Ms. Abbott had the burden to come forward in this case to But that's not the question whether there's substantial evidence. The question in this case is whether the ALJ disregarded evidence and failed to explain why he discredited the evidence, if he discredited it. The ALJ in this decision discussed the evidence, the vocational records. This is a case where he was clearly aware of it. He discussed the vocational evidence. And what did he say about Ms. Abbott's conclusions? He did not discuss. It would have been preferable, Your Honor, if the ALJ in this case would have discussed with greater specificity Well, not greater specificity. What did he say about accepting or rejecting that evidence? He noted that the vocational records showed that she was a cooperative person, had a pleasant personality, had performed the job in Alaska as a price tagger, and had left to come down to Portland and had some But Ms. Abbott said she had certain disqualifications, certain characteristics that are disqualifying characteristics according to the government's vocational expert, if they're true. That was her report. And the expert said, vocational expert said, if these things are correct, he's entitled to benefits. And what did he say, what did the ALJ say about what Ms. Abbott's statements about what the conditions were? The ALJ in this case did not specifically provide exact, precise reasons to discuss Ms. Davis's vocational report. Ms. Davis was a lay witness, an other source under the Social Security regulations. The ALJ was clearly aware of this report and could have done a better job But being aware is not enough, is it? There was enough in the ALJ's decision for Suppose the evidence all came from the claimant about what his disabilities were. Then you would say to us, well, he was aware of all of that. He didn't comment on it, didn't mention it, didn't discredit it. That's all he has to do is be aware of it, list it in the statement of facts. Well, the ALJ discussed it. And if you look at the ALJ's decision as a whole, he discussed the vocational reports and discussed her demeanor. He didn't discuss these particular suggestions. And as we went over before, I mean, there may have been some of the reasons to discredit them. But he never said that. That's true. And the ALJ could have done a better job in this case discussing this particular evidence. The report in this case is it looks like it was done on an intake basis. There's no basis for the there's no there's no evidence in the file to support where this vocational counselor drew the inferences or conclusions. Well, that comes to the question of if he didn't do it and maybe there's a question about it. What is the remedy? And we asked your opponent what our cases say about that. And he mentioned two cases, Smolin and I don't remember the other. But which opponents tell us that the remedy is to grant benefits, not to remand, to give an opportunity to the ALJ to provide reasons or explanations. Do you have cases that would say the opposite? Well, I think the first case that comes to mind is Connett. And this is the facts in this case. Connett versus Barnhart, a 2002 case, I believe. And the facts in that case, facts in this case, are in opposite to the Connett case. In Connett, it was error for the district court to have affirmed the ALJ's credibility finding. I believe the ALJ had not discussed an impairment. I think it was migraine headaches in that case. Another case that comes to mind is Schneider versus Commissioner of Social Security. And that was a lay witness case. Schneider had stronger facts in this case, however, because in the Schneider case, I believe there were five lay witnesses that discussed the claimants that the claimant met listing 1205C, which is for mental retardation. And the evidence is not, we don't have that kind of evidence in this case. Another case which I always mispronounce is Inyon, N-G-U-Y-E-N, perhaps. And that's a remand case. And I don't recall the specific facts of that case, but I remember looking at the facts of that case. Do any of these cases involve, Samoan involved actual testimony of cross-examination, in terms of family testimony? Right. Do any of the other cases involve paper evidence? I'm sorry, Your Honor? Involve paper evidence, not testimonial? You know, I don't know. In your hearings, it's almost all non-testimonial, other than the witness or his relatives, isn't it? A large part of the hearings are found in Exhibit E of the transcript, and they are letters, documentary evidence from friends, family, perhaps co-workers or supervisors. The medical evidence, as far as I can't ever remember seeing a doctor actually appear at a hearing. Every once in a while, there's a medical expert present at the hearing, Your Honor. But in general, it's all done on the medical record, the vocational record. If there's a state expert, it's always done with these papers and doctors. The live witnesses are ordinarily the interested parties. That's typically true, yes. Counsel, given that you've said that the ALJ could have done a more complete job here, and that if we thought that the Oregon records were ambiguous at best, what is it you would want us to do? Well, I believe that if there was error here, that it was harmless error. If the court were to find that it was- How can we find that it's harmless error if we thought that the Oregon records were ambiguous? So if I give you that premise, that I think that they're ambiguous, and the Oregon records say that she is severely disabled, although we're not sure what Oregon means by that, what are we supposed to do? I guess in that instance, remand for further hearing. This case was decided at Step 4. That is, the ALJ determined that she could perform her past relevant work as a retail tagger. This case should go back to Step 5. There's no medical evidence at all in the file that supports any kind of functional limitations that come even close to what this vocational counselor came up with. So there is a question there that could possibly be resolved on remand. Does she have any impairments or functional limitations that come close to what the vocational counselor suggested? Thank you. Oh, you have a little more time if you want. Are you pausing? I could talk for more. No, you don't have to talk. Okay. If you'd like to, you may. I could conclude my statements right now. Thank you. All right. Thank you. Thank you, Judge. Just briefly, I want to emphasize this is not substantial evidence review. This is legal error review. We're not here to weigh the evidence. We're here to talk about the error that the ALJ made. The ALJ could have done a better job. The ALJ did no job when it came to this vocational evidence. It simply said nothing at all. The question of going back, because this was decided at Step 4, for a decision at Step 5, the vocational expert's testimony at hearing answers the Step 5 question. That question is, are there any other jobs in the national economy that the plaintiff could do? Finally, I don't want to leave the impression that there is no evidence in the record that the claimant is disabled, and I'm looking for it. I'm afraid I can't find it. It's someplace in the government's brief. They refer to an assessment, a GAF, General Assessment of Functioning, assessment by a psychologist, which gives the claimant a rating of 50. Fifty means serious disabled, cannot keep a job, cannot hold a job. There's evidence of both sides in this record. The question here, however, is not to weigh that evidence and make a decision by this court. The question is, was there legal error when the ALJ failed? As I think conceitedly, he failed entirely to evaluate this vocational evidence. This claimant is going to be 59 years old in September. She's 5'5", 326 pounds, with a low or borderline mentally retarded intellect. There is nothing else to do but to send this case back for payment of benefits. Thank you. The case disargued will be submitted. The next case for argument is Truitt v. Barnhart. Counsel.
judges: Reinhardt, Berzon, Bybee